**In re Michael A. ENNIS and Carolyn Ennis, a/k/a Carolyn Friedell, Debtors.**

Bankruptcy No. 94–60780.

United States Bankruptcy Court,
W.D. Missouri.

Jan. 27, 1995.

Thomas J. Carlson, Springfield, MO, James G. Tichenor, Bertroche Law Offices, Des Moines, IA, for Morris Friedell.

Thomas J. O'Neal, Springfield, MO, for Norwest Bank and Paul Ahler.

Richard V. Fink, Chapter 13 Trustee, Kansas City, MO.

Michael A. Ennis and Carolyn Ennis, pro se.

*ORDER GRANTING TRUSTEE'S MOTION TO DISMISS CHAPTER 13 CASE AND DISMISSING CASE FOR FAILURE TO COMPLY WITH ORDER OF JANUARY 6, 1995 TO PAY FILING FEE*

KAREN M. SEE, Bankruptcy Judge.

After review of the file and debtors' "3rd Revised Plan" filed January 17, 1995, the court finds that the Trustee's motion to dismiss for failure to file a confirmable plan should be granted, and that the case should be dismissed for the additional reason of debtors' failure to comply with an order entered January 6, 1995 to pay the $70.00 balance of the filing fee and a $25.00 returned check charge previously billed by the Clerk's Office. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

*A. Failure to File Confirmable Plan*

At this time the court will enter an order granting the Trustee's motion to dismiss for failure to file a confirmable plan, which was heard on December 19, 1994. In the order entered January 6, 1995, the court reserved ruling on this motion to a later date, which date has now arrived.

At the hearing on December 19, 1994, one of the matters taken up was the Trustee's motion to dismiss the case for failure to file a confirmable plan. After the ruling at that hearing, it was also ruled that debtors must

file an amended plan within 15 days after the hearing date or the Chapter 13 case would be dismissed. After 15 days, an amended plan was not on file, but shortly thereafter, on January 5, 1995 the court received from debtor Carolyn Ennis a copy of a letter, titled "K*A*N*G*A*R*O*O PAPERS (INCLUDES PLAN)" which debtor Carolyn Ennis sent to all creditors. It had attached as exhibits two plans, neither of which was filed. However, at the time the letter arrived in the Clerk's Office on January 5, 1995, the court was in the midst of preparing the order on the December 19, 1994 hearing, titled Order Granting Friedell Motion to Terminate Automatic Stay, Denying Debtors' Motion for Advance of Funds, and Denying confirmation of Plan. In that order, entered January 6, 1995, it was noted (see page 17 and note 6) that the letter had just been received and the court had not had the opportunity to review either of the attached plans, so the ruling on the motion to dismiss would be reserved.

Thereafter, the two plans attached as exhibits to the letter to creditors were reviewed although the plans were not formally filed. Neither plan was filed with the court as a plan to be considered for confirmation. Rather, the letter to creditors and the plans included as exhibits appeared to be written as sarcastic or angry missives in response to the court's rulings on December 19, 1994. It appeared that neither plan would have been confirmable if either had been filed, especially in light of the January 6, 1995 order ruling the issues at the December 19, 1994 hearing. The case could have been dismissed at that point for failure to comply with the direction to file a confirmable plan within 15 days after the hearing. However, debtors were given another opportunity to correct the situation. The courtroom deputy for the undersigned judge verbally advised debtor Carolyn Ennis that the plans sent as exhibits with the letter to creditors did not constitute a plan filed with the court and that an amended plan should be filed.

Thereafter, on January 17, 1995, debtor Carolyn Ennis filed a document titled "3rd Revised Plan and Plan Summary per Court Ruling on December 19, 1994." On its face,

the plan is not confirmable. On January 25, 1995, the Chapter 13 Trustee filed an analysis indicating that the January 17th plan is not confirmable. The court adopts and incorporates the Trustee's analyses and concludes, for the reasons stated in the Trustee's analysis, that the plan is not confirmable. The court also makes the following additional conclusions about the January 17th plan.

The court concludes the plan is not confirmable based on review of provisions including but not limited to paragraphs 1, 2 and 9. All three paragraphs are contrary to rulings made in hearings on December 19, 1994 and January 9, 1995, two orders entered January 6, 1995, an order allowing the Friedell claim entered January 17, 1995, and a judgment entered in Adversary No. 94–6055 on January 17, 1995.

■ Despite the order to pay the filing fee within 10 days, entered January 6, 1995, the "3rd Revised Plan" filed January 17, 1995 provides in paragraph 2 that the $70 balance of the filing fee will be paid only "at such time as indicated by a higher court." The plan cannot be confirmed because it violates 28 U.S.C. § 1930 which requires the fee, 11 U.S.C. § 1325(a)(2), which requires the filing fee to be paid before confirmation, and Bankruptcy Rule 1006, which requires the filing fee to accompany the petition at the commencement of the case unless payment in installments is permitted, in which case all installments must be paid within 120 days after filing of the petition. Debtors must pay the filing fee or the case must be dismissed. *In re Richards*, 92 B.R. 258 (Bankr.S.D.Ohio 1988). Debtors have refused to pay the required fee. Thus, the plan also violates § 1325(a)(3) because the refusal to pay indicates the plan has not been proposed in good faith and not by any means forbidden by law.

Paragraph 9 is based on uncertain future events and contingencies. A confirmable plan must be certain and capable of present performance. There must be a regular source of income from which to make payments. Here, as indicated in paragraphs 1 and 9, the plan is based on debtors' proposed retention and expenditure of the inheritance. That issue has been previously decided in favor of creditor Morris Friedell in an order

entered January 6, 1995 and by the order allowing claim and the judgment in the adversary action, both entered January 17, 1995.

Among numerous other problems, debtors do not have a regular source of income from which to make payments under a plan. A Chapter 13 debtor must have a regular income. 11 U.S.C. § 109(e). See also 11 U.S.C. § 1322(a)(1). Thus, the chapter is commonly called the "wage-earner" chapter because plan proponents generally make plan payments from wages or earnings. Here, it appears from the plans, affidavits of financial status filed January 17, 1995 in support of a request for *in forma pauperis* status, and the file in the case that debtors have no regular source of income. At previous times, debtor Carolyn Ennis has indicated that neither debtor was employed. At the time of the November 22, 1994 hearing, Mr. Ennis had just been released from the Jackson County jail in Kansas City, Missouri and was working for board. Since that time, correspondence from Mrs. Ennis indicates that she has separated from Mr. Ennis and does not wish for him to participate in the Chapter 13 proceeding. Mrs. Ennis is not employed and has not been during the Chapter 13 proceeding, and has no source of income except a government SSI payment of $458 per month.

The plans filed by Mrs. Ennis, including the most recent one filed January 17, 1995, propose to fund the plan from inheritance funds. However, it has been previously determined that Morris Friedell has a perfected security interest in the funds, that the automatic stay should be terminated for him to enforce his rights in the funds (order entered January 6, 1995), and he has an allowed, secured claim (order entered January 17, 1995). By an judgment entered January 17, 1995, it was also ruled that the probate executor and Norwest Bank will not be required to turn over the funds to Mrs. Ennis.

As held in the order terminating the automatic stay and denying confirmation, even if Morris Friedell did not have a secured claim, he would still have an allowed, unsecured claim in the amount of $125,641.91. The January 17th plan and the previous plans would still not be confirmable and the Chapter 13 case would have to be dismissed because under 11 U.S.C. § 109(e), as of the date this case was filed on August 31, 1994, the unsecured debts in a Chapter 13 case had to be less than $100,000.00 [1]. Looking only at Morris Friedell's claim, without considering other unsecured claims, the unsecured debt would exceed the jurisdictional limit.

On its face, the "3rd Revised Plan" is not confirmable and it would not benefit any party to set a futile confirmation hearing. Debtors have been given more than an ample opportunity to file a confirmable plan. The deficiencies which prohibit confirmation of the most recent plan are major. From review of the multiple plans filed, the two additional plans circulated to creditors as exhibits to a letter, and the file in this case, the court concludes that debtors cannot propose a confirmable plan so it would be futile to prolong this Chapter 13 proceeding. At this time the court will grant the Trustee's motion to dismiss for failure to file a confirmable plan, as was taken up at the hearing on December 19, 1994 and reserved in the order entered January 6, 1995.

### B. Failure to Pay Filing Fee

This Chapter 13 case was filed August 31, 1994. Debtor was permitted to pay the filing fee in installments. Only part of the filing fee has been paid and $70.00 remains unpaid. In addition, debtors have not paid to the Clerk's Office a previously-billed $25.00 charge for a returned check. In a motion filed November 7, 1994, debtors requested an extension of time until after a plan was confirmed to pay the balance of the filing fee. An order entered January 6, 1995 denied debtor's motion to extend payment of filing fee. It was further ordered that unless debtor paid the $70.00 balance of the filing fee and the returned check charge within 10 days, the Chapter 13 case would be dis-

---

**1.** The Bankruptcy Reform Act of 1994 increased the limit on unsecured debt to $250,000 for cases filed after October 22, 1994.

missed. The 10 day period expired on January 17, 1995. As of this date, January 27, debtor has not paid the filing fee. In the amended plan filed January 17, 1995, debtors declined to pay the fee and stated it would not be paid until ordered by a higher court.

■ The filing fee must accompany the petition at the commencement of the case unless payment in installments is permitted, in which case all installments must be paid within 120 days after filing of the petition. Bankruptcy Rule 1006. Debtors are obligated to pay the full filing fee in order to remain in a bankruptcy proceeding. There is no provision for waiver of the filing fee (see January 6, 1995 orders regarding denial of requests for *in forma pauperis* status, and separate order to be entered this date also denying application to proceed *in forma pauperis*).[2] In this case, debtor was permitted to pay the fee in installments, but debtor has now refused to pay the fee and instead has indicated it will be paid only at some uncertain date after confirmation of a plan, when required by a higher court. There is no provision for payment of filing fees only after confirmation or at any other time other than the commencement of a case (which includes installment payments, as were permitted here). The plan cannot be confirmed because it violates 11 U.S.C. § 1325(a)(2), which requires that all fees be paid before confirmation. Debtors must pay the filing fee or the case must be dismissed. *In re Richards,* 92 B.R. 258 (Bankr.S.D.Ohio 1988). Debtors have refused to pay the fee so there is no recourse except to dismiss the case.

### C. Conclusion

In conclusion, debtor has had more than a reasonable time to pay the balance of the filing fee, but has failed and refused to comply with the January 6, 1995 order to pay it. In addition, none of the various plans debtor has filed or informally submitted to the court (as attachments to the letter to creditors) has been confirmable, including the "3rd Revised Plan" filed January 17, 1995. Accordingly,

**2.** Congress has authorized a three-year pilot project for waiver of fees for *in forma pauperis* debtors in Chapter 7 cases in six selected districts. The Western District of Missouri is not one of the six pilot districts. The three-year

the court will now enter its ruling on the Trustee's motion to dismiss for failure to file a confirmable plan, as taken up at the hearing on December 19, 1994, and as reserved in an order entered January 6, 1995.

Accordingly, it is hereby **ordered, adjudged and decreed** as follows:

1. The Chapter 13 Trustee's motion to dismiss for failure to file a confirmable plan, heard on December 19, 1994, is granted and debtors' Chapter 13 case is dismissed.

2. The case is dismissed for the additional reason that debtor has failed and refused to pay the balance of the filing fee in the amount of $70.00 and a returned check charge previously billed by the Clerk's Office in the amount of $25.00, as ordered in an order entered January 6, 1995.

project commenced October 1, 1994 and is to be supervised by the Judicial Conference of the United States. *See* Pub.L. 103–121, § 111(d)(3); 28 U.S.C.A. § 1930, Statutory Notes, Report on Bankruptcy Fees.